AUSA: William C. Kinder

| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | **24 MAG 2582** |
| UNITED STATES OF AMERICA<br><br>v.<br><br>MIGUEL DE JESUS REYES MEDINA<br>  a/k/a "Azua," and<br>ERIK ALBERTO LOPEZ VALDEZ,<br><br>                Defendants. | **COMPLAINT**<br><br>Violations of 21 U.S.C. §§ 841, 846 and 18 U.S.C. § 2<br><br>COUNTY OF OFFENSE:<br>NEW YORK |

SOUTHERN DISTRICT OF NEW YORK, ss.:

SAMUEL LOUIS JR., being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration ("DEA"), and charges as follows:

### COUNT ONE
### (Conspiracy to Distribute Narcotics)

1. At least in or about April 2024, in the Southern District of New York and elsewhere, MIGUEL DE JESUS REYES MEDINA, a/k/a "Azua," and ERIK ALBERTO LOPEZ VALDEZ, the defendants, and others known and unknown, knowingly and intentionally, combined, conspired, confederated, and agreed together and with each other to violate the narcotics laws of the United States.

2. It was a part and an object of the conspiracy that MIGUEL DE JESUS REYES MEDINA, a/k/a "Azua," and ERIK ALBERTO LOPEZ VALDEZ, the defendants, and others known and unknown, would and did distribute and possess with the intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3. The controlled substance MIGUEL DE JESUS REYES MEDINA, a/k/a "Azua," and ERIK ALBERTO LOPEZ VALDEZ, the defendants, conspired to distribute and possess with intent to distribute was 400 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

### COUNT TWO
### (Distribution of Narcotics)

4. On or about April 10, 2024, in the Southern District of New York and elsewhere, MIGUEL DE JESUS REYES MEDINA, a/k/a "Azua," the defendant, knowingly and intentionally distributed and possessed with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and aided and abetted the same.

5. The controlled substance involved in the offense was mixtures and substances containing a detectable amount of protonitazene, in violation of Title 21, United States Code, Section 841(b)(1)(C).

(Title 21, United States Code, Section 812, 841(a)(1), 841(b)(1)(C); Title 18, United States Code, Section 2.)

## COUNT THREE
### (Distribution of Narcotics)

6. On or about April 16, 2024, in the Southern District of New York and elsewhere, MIGUEL DE JESUS REYES MEDINA, a/k/a "Azua," and ERIK ALBERTO LOPEZ VALDEZ, the defendants, knowingly and intentionally distributed and possessed with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and aided and abetted the same.

7. The controlled substance involved in the offense was mixtures and substances containing a detectable amount of protonitazene, in violation of Title 21, United States Code, Section 841(b)(1)(C).

(Title 21, United States Code, Section 812, 841(a)(1), 841(b)(1)(C); Title 18, United States Code, Section 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

8. I am currently a Special Agent with the DEA. I have been personally involved in the investigation of this matter. This Affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement officers and other individuals. Because this Affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### The April 10, 2024 Transaction

9. Based on my participation in this investigation, law enforcement surveillance, my communications with a confidential source working at the direction of law enforcement ("CS-1"),[1] my discussions with other law enforcement officers, and my review of

---

[1] CS-1 is providing information to law enforcement in exchange for financial compensation. CS-1 has previous convictions, including for drug possession, assault, burglary, and illegal weapons possession. CS-1 has been providing information to law enforcement since 1994. Information provided by CS-1 has been independently verified by law enforcement officials and has led to the seizure of over 25 kilograms of narcotics. The information provided by the CS in this investigation

recorded conversations, call logs, and other records, I have learned the following regarding a narcotics transaction on April 10, 2024:

      a.      On or about April 9, 2024, CS-1 communicated by telephone with an individual known to CS-1 as "Azua," regarding a potential deal to purchase fentanyl on behalf of a purported drug customer. As described below, members of law enforcement have identified "Azua" as MIGUEL DE JESUS REYES MEDINA, the defendant. During the telephone call, which was recorded, REYES MEDINA agreed to meet CS-1 the following day to sell CS-1 approximately 74 grams of fentanyl.[2]

      b.      On or about April 10, 2024, CS-1 met with REYES MEDINA in the vicinity of 1253 St. Nicholas Avenue in New York, New York, for the purpose of purchasing fentanyl from REYES MEDINA. The meeting between CS-1 and REYES MEDINA was recorded and observed by members of law enforcement.

      i.      At approximately 4:12 p.m., CS-1 arrived in the vicinity of 1253 St. Nicholas Avenue. After CS-1 arrived, REYES MEDINA entered CS-1's vehicle. REYES MEDINA then placed a package of narcotics in CS-1's lap and indicated, in substance and in part, that it was 74 grams of fentanyl, as CS-1 and REYES MEDINA had agreed.

      ii.      During their meeting, CS-1 told REYES MEDINA, in substance and in part, that he understood that fentanyl is very dangerous, and that even just smelling fentanyl can cause severe injury or death. CS-1 further explained that he is scared of dealing with fentanyl because of its danger, comparing it to Manteca, and elaborating that the problem is people mix it with other substances.[3] REYES MEDINA agreed, replying that CS-1 should not put [his] nose on it, which CS-1 understood to mean test it, because the package of narcotics was good stuff and is strong. CS-1 then told REYES MEDINA, in substance and in part, that CS-1's customer was desperate for fentanyl despite its danger. REYES MEDINA responded, in substance and in part, that once CS-1's customer tried the sample, he would want to buy more right away.

      iii.      While REYES MEDINA was still in the car, CS-1 drove to another location in New York, New York, ostensibly to deliver the narcotics to CS-1's purported customer. CS-1 asked REYES MEDINA to confirm that the price for the 74 grams of fentanyl was $2,000. REYES MEDINA responded, in substance and in part, that the price was $2,000 all together.

---

has been determined to be reliable and corroborated by other evidence, including law enforcement surveillance, among other things.

[2] The recorded conversations referenced in this section are all in Spanish. Although I do not speak Spanish, other law enforcement officers in my group do and have relayed the substance of these conversations to me.

[3] Based on my training and experience and my involvement in this investigation and others, I know that "manteca" is a slang term for heroin.

     iv. CS-1 then exited the vehicle and entered a building, where he gave the package of narcotics to a member of law enforcement who was waiting inside the building.

     v. CS-1 returned to the vehicle and handed $2,000 to REYES MEDINA, completing the transaction. CS-1 drove with REYES MEDINA back to the vicinity of 1253 St. Nicholas Avenue, where REYES MEDINA exited. REYES MEDINA reiterated, in substance and in part, that CS-1's customer would want to buy more fentanyl right away.

### The April 16, 2024 Transaction

  10. Based on my participation in this investigation, law enforcement surveillance, my communications with CS-1, my discussions with other law enforcement officers, and my review of recorded conversations, call logs, and other records, I have learned the following regarding a narcotics transaction that occurred on April 16, 2024:

   a. On or about April 15, 2024, at the direction of law enforcement, CS-1 spoke by telephone with MIGUEL DE JESUS REYES MEDINA, a/k/a "Azua," which call was recorded. During the telephone call, REYES MEDINA agreed to sell CS-1 500 grams of fentanyl the following day for the price of $12,250.

   b. On or about April 16, 2024, CS-1 met with REYES MEDINA for the purpose of purchasing 500 grams of fentanyl from REYES MEDINA. The interactions between CS-1 and REYES MEDINA were recorded and observed by members of law enforcement.

     i. At approximately 3:00 p.m., CS-1 drove to the vicinity of 1253 St. Nicholas Avenue to meet with REYES MEDINA. After CS-1 arrived, REYES MEDINA entered CS-1's vehicle and informed CS-1, in substance and in part, that the courier who was bringing the fentanyl was going to be late. REYES MEDINA exited CS-1's vehicle. CS-1 waited in his vehicle in the vicinity of 1253 St. Nicholas Avenue for the courier to arrive.

     ii. At approximately 7:07 p.m., REYES MEDINA called CS-1. REYES MEDINA stated, in substance and in part, that the courier would arrive soon. Shortly thereafter, REYES MEDINA told CS-1, in substance and in part, to travel to the vicinity of 344 Fort Washington Avenue, New York, New York to obtain the narcotics from the courier. CS-1 departed in his vehicle toward 344 Fort Washington Avenue.

     iii. At approximately 7:52 p.m., CS-1 arrived in his vehicle at 344 Fort Washington Avenue. At approximately 7:55 p.m., REYES MEDINA entered CS-1's vehicle. REYES MEDINA told CS-1 that he was unsure where the courier was, then REYES MEDINA exited the vehicle to look for the courier.

     iv. At approximately 7:58 p.m., a male later identified by law enforcement as the defendant ERIK ALBERTO LOPEZ VALDEZ, entered CS-1's vehicle. LOPEZ VALDEZ handed CS-1 a package of narcotics, and CS-1 and LOPEZ VALDEZ had a short conversation, which was recorded. In substance and in part: CS-1 asked LOPEZ VALDEZ

what the quantity of narcotics was in the package. LOPEZ VALDEZ said it was 420 grams. CS-1 responded that the deal was for 500 grams. LOPEZ VALDEZ disagreed. CS-1 then called out to REYES MEDINA, who was standing outside the vehicle, saying that the package was only 420 grams, which was less than the agreed-upon amount. REYES MEDINA told CS-1, in substance and in part, to leave it like that and see if he wants it. CS-1 responded that he would call his customer to check. LOPEZ VALDEZ told CS-1 that more drugs would be available next week.

        v.    At approximately 8:00 p.m., CS-1 notified surveilling members of law enforcement of the presence of narcotics. Law enforcement officers then arrested REYES MEDINA and LOPEZ VALDEZ, who each identified themselves to law enforcement after their arrests.

        vi.    Following the arrests, members of law enforcement recovered a cellophane-wrapped package of suspected fentanyl from CS-1's vehicle.

        vii.    In addition, searches of REYES MEDINA and LOPEZ VALDEZ incident to arrest resulted in the recovery of REYES MEDINA's cellphone, LOPEZ VALDEZ's cellphone, and a small plastic bag containing suspected fentanyl from LOPEZ VALDEZ's wallet.

## Cellphone Communications of REYES MEDINA and LOPEZ VALDEZ

11.    Based on my participation in this investigation, my participation in post-arrest interviews of the defendants, my review of the cellphones recovered from MIGUEL DE JESUS REYES MEDINA, a/k/a "Azua," and ERIK ALBERTO LOPEZ VALDEZ, the defendants, and my discussions with other law enforcement officers, I have also learned the following:

    a.    After their arrests, REYES MEDINA and LOPEZ VALDEZ each signed a written consent form permitting members of law enforcement to search their respective cellphones (the "REYES MEDINA Phone" and the "LOPEZ VALDEZ Phone").

    b.    Based on my review of the defendant's cellphones, I know that a particular number ending in 5082 (the "5082 Number") is saved as a contact in both the REYES MEDINA Phone and the LOPEZ VALDEZ Phone. Both defendants' phones had numerous contacts with the 5082 Number around the time of the April 16, 2024 narcotics transaction described above. In particular:

        i.    Approximately three phone calls were made between the LOPEZ VALDEZ Phone and the 5082 Number at approximately 7:51 p.m. on or about April 16, 2024—that is, just minutes before LOPEZ VALDEZ entered CS-1's vehicle and handed CS-1 the package of narcotics.

        ii.    Approximately 11 outgoing calls were made from the REYES MEDINA Phone to the 5082 Number between approximately noon and 7:30 p.m. on April 16, 2024. The REYES MEDINA Phone received three calls from the 5082 Number at approximately 12:02 p.m., 6:08 p.m., and 7:45 p.m. the same day.

**The Defendants Sold CS-1 Protonitazene, a Synthetic Opioid More Potent than Fentanyl**

12. Based on my involvement in this investigation and my review of DEA laboratory reports, I have learned that the packages of narcotics provided to CS-1 by the defendants on April 10, 2024 and April 16, 2024 tested positive for the controlled substance N,N-Diethyl-2-(5-nitro-2-(4-propoxybenzyl)-1H-benzimidazol-1-yl)ethan-1-amine, also known as protonitazene. The plastic bag of narcotics recovered from ERIK ALBERTO LOPEZ VALDEZ's wallet also tested positive for protonitazene. In particular:

   a. DEA laboratory testing determined that the package of narcotics handed to CS-1 by MIGUEL DE JESUS REYES MEDINA, a/k/a "Azua," on April 10, 2024 consisted of 72.471 grams of protonitazene.

   b. DEA laboratory testing determined that the package of narcotics handed to CS-1 by LOPEZ VALDEZ on April 16, 2024 consisted of 416.6 grams of protonitazene.

   c. DEA laboratory testing determined that the small plastic bag of narcotics recovered by law enforcement from LOPEZ VALDEZ's wallet consisted of 1.47 grams of protonitazene.

13. Based on my training and experience and my involvement in this investigation, I know that protonitazene, a controlled substance, is a synthetic opioid that is up to three times more potent than fentanyl.

WHEREFORE, I respectfully request that MIGUEL DE JESUS REYES MEDINA, a/k/a "Azua," and ERIK ALBERTO LOPEZ VALDEZ, the defendants, be arrested and imprisoned or bailed, as the case may be.

_s/ by the Court with permission_
SAMUEL LOUIS JR.
Special Agent
Drug Enforcement Administration

Sworn to before me
this  15th  day of July, 2024.

_____
THE HONORABLE ROBERT W. LEHRBURGER
United States Magistrate Judge
Southern District of New York